UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    PHILIP FELICE, III                            CASE NO. 05-71982

                                 Debtor              Chapter 13
--------------------------------------------------------
APPEARANCES:

SAMUEL J. COSTA, ESQ.
SAMUEL J. COSTA, P.C.
Attorney for Debtor
Two Clinton Square, Suite 215
Syracuse, New York 13202

BOND, SCHOENECK & KING, PLLC                STEPHEN A. DONATO, ESQ.
Special Counsel for Debtor                             Of Counsel
One Lincoln Center
Syracuse, New York 13202

EDWARD Z. MENKIN, ESQ.
Attorney for Creditor Catherine Lambie
909 State Tower Building
109 South Warren St.
Syracuse, New York 13202

LYNN HARPER WILSON, ESQ.
Staff Attorney for Chapter 13 Trustee
250 S. Clinton Street, Suite 504
Syracuse, New York 13202

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

       On February 13, 2006, Philip Felice, III ("Debtor") obtained an Order to Show Cause from

this Court seeking a hearing on his motion for an order vacating the Court's Order of February

8, 2006 dismissing his Chapter 13 case ("Dismissal Order"). The Debtor's motion initially appeared on the Court's calendar at Syracuse, New York on February 21, 2006. The motion was opposed by creditor Catherine Lambie ("Lambie"). The Court, after hearing oral argument, adjourned the motion to its Syracuse calendar on March 21, 2006 and invited the parties to file memoranda of law in the interim addressing primarily the issue of excusable neglect. On March 16, 2006, Debtor obtained a second Order to Show Cause seeking an order staying Lambie from proceeding in New York State Supreme Court, Onondaga County, in an action commenced by Lambie against the Debtor ("State Court action"), until this Court had ruled on the Debtor's motion to vacate the Dismissal Order. The Court granted a temporary restraining Order and scheduled the second Order to Show Cause for a hearing on March 21st as well.[1]

On March 21st the parties again appeared for oral argument. Both the Debtor and Lambie filed memoranda of law, as requested, and the Chapter 13 Trustee's office filed two affirmations indicating, inter alia, that the Trustee was taking no position in connection with the motions. Following further oral argument, the Court indicated to the parties that it would allow them to file any further memoranda by Friday, March 24, 2006, after which the Court would issue a written decision. On March 24th, Debtor filed a Supplemental Affirmation in Further Support of his motion pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, as well as a Supplemental Memorandum of Law. Lambie did not file any additional papers.

---

[1] In connection with the second Order to Show Cause, the Debtor is represented by the firm of Bond, Schoeneck & King ("Bond") who indicated that it had been retained by Debtor's counsel Samuel Costa, Esq("Costa") as his special counsel. As of March 21st, though Attorney Costa represented to the Court that he had retained Bond, a review of the case's electronic docket does not reveal any written retainer of special counsel.

## **JURISDICTIONAL STATEMENT**

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A) and (O).

## **FACTS**

In order to evaluate the legal issues, a chronology of the factual events surrounding the Dismissal Order needs to be reviewed:

10/14/05 - Debtor files a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code (11U.S.C. §§101-1330) ("Code").[2] The petition was not signed by the Debtor but by one "Brigitte Jaroudi" utilizing a power of attorney also filed with the petition. The petition indicates "Street Address of Debtor" 402 Willis Ave.(Currently Incarcerated), Syracuse ,N.Y. 13204.

11/02/05 - Debtor files a Chapter 13 Plan dated 10/31/05. The Plan is electronically signed by the Debtor. There is no indication that the Plan is noticed for a confirmation hearing date.

11/02/05 - Debtor files Schedules. In Schedule F, "Creditors Holding Unsecured Nonpriority Claims," the Debtor lists "Catherine Lambie, c/o Edward Z. Menkin, Esq., 909 State Tower Bldg. 109 S. Warren St. Syracuse, N.Y. 13203, tort claim - disputed and unliquidated - $0.00."

---

[2] On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective. It is inapplicable to this case, but its provisions, specifically 11 U.S.C. § 1328(a)(4), have been referred to in the course of the oral arguments in the contested matter sub judice.

12/5/05 - The Chapter 13 trustee("Trustee") files and serves a motion electronically, seeking a conditional order dismissing Debtor's case unless the Debtor "files and serves a notice of confirmation hearing within 15 days of entry of order." The motion is made returnable before this Court in Syracuse on "September 20, 2005." ("First Dismissal Motion")

12/12/05 - Trustee files and serves an amended notice of motion electronically, seeking the identical relief sought in the 12/05/05 motion, but correcting the return date of the motion to January 17, 2006 in Syracuse.

1/5/06 - Trustee files and serves a second motion electronically, seeking an order dismissing the Debtor's case for unreasonable delay in that the Debtor has failed to appear at meetings of creditors scheduled in Syracuse on November 21, 2005 and December 19, 2005. The Trustee's second motion is to be heard before this Court in Syracuse on February 21, 2006. ("Second Dismissal Motion")

1/17/06 - Debtor does not respond to the Trustee's First Dismissal Motion, and there is no appearance by Costa on the return date.

1/19/06 - The Court signs a Conditional Order of Dismissal requiring the Debtor to file and serve a notice of confirmation hearing "on or before fifteen (15) days from the date of this Order" or the Trustee will submit an ex parte order dismissing the Debtor's case.

1/31/06 - Costa files a Notice of Cross-Motion and Affirmation in response to the Trustee's Second Dismissal Motion asserting, inter alia, that at the time the Debtor filed his Chapter 13 case he was incarcerated in the Elmira Correctional Facility, Elmira, New York, "pursuant to an Assault conviction in August, 2005, following an altercation with creditor Lambie." The Cross-Motion is scheduled to be heard in Syracuse on February 21, 2006. Costa also files a Memorandum of Law.

2/08/06 - Court grants an Order dismissing Chapter 13 case based on an Affidavit of Lynn Harper Wilson, Esq., Staff Attorney for the Standing Chapter 13 Trustee, affirming that the Debtor failed to comply with the Conditional Order of January 19, 2006.

2/10/06 - Edward Z. Menkin, Esq. files and serves a Responding Affirmation in support of the Trustee's Second Dismissal Motion and in opposition to "Debtor's Motion to waive the requirement that he attend a first meeting of creditors pursuant to 11 U.S.C. § 343."

2/13/06 - Debtor obtains an Order to Show Cause asking the Court to reconsider, alter, amend or vacate the Dismissal Order.

3/16/06 - Debtor obtains a second Order to Show Cause asking the Court to stay Lambie from prosecuting her state court action pending the disposition of the motion to reconsider, alter, amend or vacate the Dismissal Order.

## **ARGUMENTS**

Debtor's initial argument for seeking a vacation of the Dismissal Order rested upon Costa's assertion that he was not aware of the Conditional Order of Dismissal, dated January 19, 2006, and, therefore, the first time he became aware of the Dismissal Order was when he was served with it. Costa contends that he was out of the country the week of January 16, 2006, and despite the fact that his staff reviewed e-mails in his absence, "the Court's Conditional Order dated January 19, 2006 was either deleted or failed to be noted for my review or action upon return." (*See* Affirmation of Samuel J. Costa, Esq, dated February 10, 2006 at ¶ 5) At the oral argument of the initial Order to Show Cause on February 21, Costa acknowledged that the dismissal of Debtor's case was the result of "law office failure," but argued that the Debtor should

not be charged with the consequences of that failure. In adjourning the oral argument on the initial Order to Show Cause, the Court invited Costa to brief that very issue. Prior to the adjourned date, Costa allegedly retained Bond as his special counsel and in a Supplemental Affirmation, dated March 17, 2006, Costa takes a slightly different tack, asserting that the failure to become aware of the Conditional Order was not the result of law office failure after all but was, in fact, the result of failures with respect to the electronic case filing (ECF) system maintained by the Clerk of this Court. (Supplemental Affirmation, dated March 17, 2006, ¶¶ 6, 7, and 8) Additionally, Costa points to the possible confusion created by the Chapter 13 Trustee having filed two dismissal motions, the first based upon the Debtor's failure to notice his plan for confirmation and the second based upon the Debtor's failure to appear at meetings of creditors. He contends that he was focused on the latter motion, attempting to insure the appearance of his client, who was then incarcerated in a state correctional facility, at a re-scheduled meeting of creditors. Finally, in a Second Supplemental Affirmation, dated March 24, 2006, he downplays the significance of his failure to notice the Debtor's Chapter 13 Plan for a confirmation hearing, noting that in his lengthy experience representing Chapter 13 debtors he typically does not notice a debtor's plan for a confirmation hearing until after the meeting of creditors has been concluded because only at that point can he be certain that the case will even proceed toward confirmation. (Second Supplemental Affirmation, dated March 24, 2006, at ¶ 5)

**DISCUSSION**

While this Court appreciates the procedures typically followed by Costa with regard to noticing a Chapter 13 debtor's plan for confirmation only after the closure of a debtor's meeting

of creditors, that argument is a classic "red herring" in light of the fact that Rule 3015-1 of the Local Bankruptcy Rules of this District, generally, and the Conditional Order specifically directed his office to notice the Debtor's Plan for a confirmation hearing within 15 days of the date of the Order.

As an aside to the "standard operating procedure" argument, Costa asserts that his lack of diligence in complying with the Conditional Order was the direct product of his efforts to arrange for his client to appear at an adjourned meeting of creditors. He contends that in the course of his discussions with the Chapter 13 Trustee, he made the Trustee aware of the fact that he would be away from his office from January 16th to the 20th. He cites to a letter he wrote to the Trustee on December 15, 2005, requesting an adjournment of the Debtor's Meeting of Creditors pending a hearing on the Debtor's motion scheduled for February 21st (the "Cross-Motion"). Costa argues that,"[i]mplicit in this letter was my understanding that, under the circumstances and the fact that I advised the Trustee that I would not be available on January 17, 2006, I would not be required to respond to the First Dismissal Motion." (Second Supplemental Affirmation in Further Support of Debtor's Motion for Reconsideration, dated March 24, 2005 at ¶ 8.) Once again, if that was Costa's intent, he did a very poor job of conveying it to the Chapter 13 Trustee, and there is no indication from the Trustee that he was in agreement. In fact, the Trustee's submission of the Conditional Order following the January 17th motion date suggests otherwise.

Additionally, assuming arguendo, that Costa's assertion that he was completely unaware of the Conditional Order was true, he provides no explanation for the fact that he was served with the First Dismissal Motion that resulted in that Order as early as December 5, 2005, and again on December 12, 2005, and all that was required to comply with the Order was that he send out a

simple notice to creditors indicating the date on which confirmation of the Debtor's Plan would be initially considered. Furthermore, he offers no explanation as to why, upon his return to his office, presumably on or about January 23rd, he did not, at least, inquire of the Trustee as to the disposition of the First Dismissal Motion. Had he done so, he would still have had ample time to comply with the Conditional Order. It is against this factual background that Costa argues that his entire focus was justifiably fixed solely on the need to produce the Debtor for purposes of attending a meeting of creditors.

Both parties seem to agree that the decision of the United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S.380 (1993), and its progeny, control disputes in which one party seeks to avoid the consequences of its failure to act timely in reliance on the concept of "excusable neglect." Unquestionably, in *Pioneer*, the Supreme Court expanded that concept significantly beyond the limits that had defined it pre-*Pioneer*. No longer could a court, in considering its application limit excusable neglect to those situations in which the tardy litigant's failure to act was due solely to circumstances beyond its control. The Supreme Court announced a more "flexible" standard in interpreting excusable neglect as applied, in that particular instance, to Federal Rule of Bankruptcy Procedure 9006, by defining the concept as including,"inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388. So that future litigants would not seek to apply that expanded definition beyond the realm of credulity, the Court identified the so called five "Dix factors" which had been utilized by the Ninth Circuit Bankruptcy Appellate Panel in rendering its decision in *In re Dix*, 95 B.R. 134, 138 (9th Cir. BAP 1988), which the Supreme Court essentially affirmed in *Pioneer*. Ironically, the Supreme Court specifically rejected the fifth factor relied upon by the *Dix* court, that being a reluctance to penalize the client for the neglect of its counsel (an argument

also being advanced by Costa in this contested matter). Citing a number of its prior decisions, the Supreme Court noted, "[c]onsequently, in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents and their counsel was excusable. *Pioneer*, 507 U.S. at 397. The remaining *Dix* factors were outlined as follows, (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; and (4) whether the creditor acted in good faith.

Costa argues that factors (1), (2), and (4) above have been resolved in his favor, asserting that he moved quickly in filing the motion to reconsider and vacate the Dismissal Order and that creditor Lambie will not be prejudiced by the reinstatement of the Chapter 13 case as she will still be entitled to oppose confirmation of the Debtor's proposed plan. Conversely, the Debtor contends that he will suffer "extreme prejudice" if he were forced to re-file under BAPCPA, thereby subjecting himself to the potential of a large, non-dischargeable state court judgment. *See* Debtor's Supplemental Memorandum of Law, dated March 24, 2006 at page 2. Thus, the sole remaining issue, according to Costa, is the reason for the Debtor's failure to comply with the Conditional Order of Dismissal.

Indeed, it is this factor which the Second Circuit Court of Appeals and other courts have focused on in addressing excusable neglect, noting that "in the 'typical' case, 'three of the [*Pioneer*] factors' -- the length of the delay, the danger of prejudice, and the movant's good faith -- 'usually weigh in favor of the party seeking the extension.'" *In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005), quoting *Pioneer*, 507 U.S. at 366. *See also United States v. Torres*, 372 F.3d 1159, 1162-63 (10th Cir. 2004) (stating that "fault in the delay remains a very import factor --

perhaps the most important single factor -- in determining whether neglect is excusable"); *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5-6 (1st Cir. 2001) (indicating that "the excuse given for the late filing must have the greatest import"). This requires that the Court examine the reasons given for missing the deadline. *Enron*, 429 F.3d at 124 (citing *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)). As recognized by the Second Circuit Court of Appeals in *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355 (2d Cir. 2003), "there may be circumstances in which the absence of a docket entry and similar factors create legitimate and *excusable* confusion . . . ." *Id.* at 371(emphasis supplied).

Debtor's argument, in this regard, is essentially that Costa was confused and misled by the actions of the Trustee whose primary focus, Costa believed, was on having the Debtor produced in Syracuse for a meeting of creditors. Costa points to the fact that he received the Trustee's First Dismissal Motion on or about December 12, 2005, within a few weeks after the first scheduled meeting of creditors, which was not held due to the failure of the Debtor to personally appear. During the intervening period, Costa was focused on arranging for the appearance of the Debtor with the New York State Department of Corrections. He contends that he advised the Trustee that he would be absent from his office the week of January 16-20, 2006 and, therefore, he would be unable to schedule a motion seeking an order authorizing and directing the Debtor to appear in a particular manner until after his return. He asserts that the Trustee agreed that the motion could be made returnable on February 21, 2006. He confirmed his plans with the Trustee in a letter to him, dated December 15, 2005. Costa then opines that he reasonably believed he would not be required to respond to the First Dismissal Motion. The Affirmations filed by Mark W. Swimelar, the Chapter 13 Trustee, dated March 20, 2006, and by Lynn Harper Wilson, the Chapter 13 Trustee's Staff Attorney, dated March 20, 2006, do not

appear to refute or confirm Costa's understanding.

In the Court's opinion, this latter argument is Costa's only salvation. Were it not for the pendency of the Trustee's two motions seeking essentially the same relief, to wit: dismissal of the Debtor's case, the first based on the failure to notice a plan for confirmation and the second based upon the failure of the Debtor to appear for a meeting of creditors, the Court would pay little attention to the "excusable neglect" argument. Though it is not entirely clear why the Trustee filed the Second Dismissal Motion before the First Dismissal Motion had been heard, it could and did appear to confuse even Lambie's counsel as he filed a Responding Affirmation to the Trustee's Second Dismissal Motion some two days after the Court had signed the Order dismissing the Debtor's case. Costa makes much of his contention that his sole focus at the time was on insuring the Debtor's attendance at a re-scheduled meeting of creditors, particularly given his typical practice of not scheduling a confirmation hearing prior to the conclusion of such a meeting.

Costa also relies on case law interpreting Federal Rule of Civil Procedure 60(b)(6), applicable herein pursuant to Federal Rule of Bankruptcy Procedure 9024, asserting that, "it constitutes a grand reservoir of equitable power to do justice in a particular case (citations omitted)." *See* Debtor's Memorandum of Law, dated March 17, 2006 at page 5. In this regard, Costa suggests that forcing his client to re-file under BAPCPA will "directly and unfairly prejudice the Debtor." *Id.*[3] Costa presumably makes reference to BAPCPA § 1328(a)(4), which

---

[3] Though not dispositive of this contested matter, the Court notes that the Debtor is currently serving a term of eight years in a state prison having been convicted of assaulting Lambie. Additionally, pre-petition, Lambie commenced a civil suit for assault against the Debtor, "seeking a $5,000,000 award plus $10,000,000 punitive damages, which the debtor disputes." *See* Affirmation of Costa, dated January 26, 2006, at ¶¶ 3 and 17.

denies a discharge to a Chapter 13 debtor who has incurred a debt arising out of "damages awarded in a civil action against the debtor as the result of willful or malicious injury by the debtor that caused personal injury to an individual." If the Debtor is able to vacate the Dismissal Order, he will not be faced with the foregoing prohibition, though arguably Lambie is not without a remedy in the current case. *See* 11 U.S.C. § 1325(a)(3).

Turning to the second *Pioneer* factor, the extent of the delay and its impact on the proceedings, the Court notes that Costa sought to vacate the Dismissal Order by initially obtaining an Order to Show Cause on February 13, 2006, some five days after the execution of the Dismissal Order. As such, the Court can hardly conclude that delay was a prejudicial factor.

The third *Pioneer* factor perhaps is most problematic for the Debtor, the reason for the delay or in this case the reason for the entry of the Dismissal Order in the first instance. As the Court has observed, Costa's only salvation, as far as it is concerned, lies in the confusion engendered by the simultaneous pendency of two dismissal motions filed by the Trustee and Costa's arguably justified belief that, given his correspondence with the Trustee prior to his departure for vacation, his client would not be adversely impacted by his failure to answer the First Dismissal Motion. Thus, the Court will find that this factor also weighs ever so slightly in the Debtor's favor.

Finally, there is the issue of the fourth *Pioneer* factor, namely, the good faith of the party seeking to be relieved of the neglect. While, as this Court has observed, given the facts surrounding the Chapter 13, good faith may very well become a contested issue in subsequent proceedings, the Court need only observe that with regard to the instant contested matter involving the dismissal of the Debtor's case based on his failure to notice his plan for confirmation, it finds no evidence of bad faith on the part of the Debtor.

13

Accordingly, the Court will vacate the Dismissal Order, *nunc pro tunc* to February 8, 2006 and reinstate Debtor's Chapter 13 case. To the extent that creditor Lambie wishes to proceed with the State Court action, the Court will find that, pending a further order of this Court, it is subject to the stay provisions imposed by Code § 362(a).

IT IS SO ORDERED.

Dated at Utica, New York

this 26th day of April 2006

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge